UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  05/28/2024
```

JESSE SHEINER, individually and on behalf of all others
similarly situated,

                              Plaintiff,

          -against-

SUPERVALU INC.,

                              Defendant.

No. 22 Civ. 10262 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

 Plaintiff Jesse Sheiner ("Plaintiff") brings this action, on behalf of himself and all others similarly situated, against Defendant Supervalu Inc. ("Defendant"), for (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"); (2) violation of "state consumer fraud acts"; (3) breach of express warranty, implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act ("MMWA"); (4) fraud; and (5) unjust enrichment. (Amended Complaint "Am. Compl.," ECF No. 12, ¶¶ 88-116.)

 Defendant moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (the "Motion", ECF No. 16.) For the following reasons, Defendant's Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Background

 The following facts are taken from the Amended Complaint and assumed to be true for the purposes of Defendant's Motion.

 Defendant sells a lidocaine patch product (the "Product"). (Am. Compl. ¶ 1.) The Product's front label describes it as "Maximum Strength Lidocaine Patch" product which contains "topical

anesthetic 4% Lidocaine" which "desensitize[s] aggravated nerves" to provide "temporary relief of pain" to the "back, neck, shoulders, knees, elbows" for "up to 8 Hours of relief." (*Id.* ¶¶ 1-2.) The front label also incorporates that statement "compare to Salonpas® Lidocaine Patch active ingredient" (*Id.*) Plaintiff alleges that, when purchasing the Product, he was misled by the following statements:

"Up to 8 Hours Numbing Relief". Plaintiff asserts that consumers understand this phrase to be a promise that the Product will adhere to a consumer's body and provide maximum strength pain relief for "no less than eight hours." (*Id.* ¶ 29.) As support, he refers to the "Directions" section on the back label of the Product, which instructs that a consumer should "apply 1 patch at a time to affected area, not more than 3 to 4 times daily" and "remove patch from skin after at most 8 hours of application." (*Id.* ¶¶ 30-31.) He alleges that the Product "is unable to adhere to skin for more than four hours, often peeling off within minutes of light activity." (*id.* ¶ 32) and "did not reliably adhere to Plaintiff's body for anywhere close to eight hours, which prevented it from providing even temporary pain relief" (*id.* ¶ 76). Plaintiff also bases this claim on the results of a study by the *Journal of Pain Research.* (*Id.* ¶¶ 21-25, 32, 37, 52.)

"Maximum Strength". Plaintiff alleges that the Product is not "Maximum Strength" because "prescription lidocaine patches exist on the market that deliver greater amounts of lidocaine to the user." (*Id.* ¶ 35.) Plaintiff alleges the statement inviting consumers to "compare to Salonpas® Lidocaine Patch active ingredient" further contributes to this confusion because the Product "contains roughly forty percent less lidocaine" than found in the Salonpas® OTC Lidocaine Patch product. (*Id.* ¶ 41.)

"Numbing Relief". Plaintiff alleges the phrase "numbing relief" implies the OTC Product provides relief associated with "medical treatments requiring a prescription and FDA approval."

(*Id*. ¶ 47.) He also alleges this phrase "implies [the Product] will completely block and numb nerves and pain receptors, eliminate responses to painful stimuli, and can treat neuropathic and musculoskeletal pain, including back pain." (*Id*. ¶ 45.)

Plaintiff purchased the Product at locations including Walmart, Walgreens, and/or CVS throughout Sullivan and Orange Counties, among other places, between June 2020 and November 2022, or among other times. (*Id*. ¶ 71.) Plaintiff bought the Product at or exceeding the above-referenced price and allegedly paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it altogether. (*Id*. ¶¶ 77-78.)

## II.    Procedural History

Plaintiff filed the original Complaint on December 3, 2022. (ECF No. 1.) Defendant initially sought leave on April 11, 2023 (ECF No. 8) to bring a motion to dismiss the initial Complaint. Plaintiff responded on April 14, 2023 (ECF No. 10) opposing leave and informing the Court that he would avail himself of his right to amend as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The Court, *inter alia*, directed Plaintiff to file an Amended Complaint no later than May 11, 2023. (ECF No. 11). Plaintiff then filed an Amended Complaint on May 11, 2023. (ECF No. 12.)

On September 28, 2023, Defendant filed the instant Motion (ECF No. 16), as well as a memorandum of law ("Def.'s MoL", ECF No. 17) and reply ("Def.'s Reply", ECF No. 20), in support thereof. Plaintiff filed an opposition to Defendant's Motion. ("Pltf.'s Opp.", ECF No. 19).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

### I.      Withdrawn Claims

In his opposition papers, Plaintiff withdraws his claims on behalf of the Consumer Fraud Multi-State Class, and his claims for breaches of the Implied Warranty of Merchantability/Fitness for a Particular Purpose and the MMWA. (Pltf.'s Opp. at 1 n.1.) As a result, these claims are dismissed.

### II.     NY GBL Claims

Plaintiff's first cause of action arises under Sections 349 and 350 of the GBL. Section 349 of the GBL provides a cause of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law. § 349(a), (h). "'Deceptive acts' are acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492,

500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce," and is analyzed under the same "reasonable consumer" standard as Section 349. *Id.* (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

   To state a claim under either Section 349 or 350 of the GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 N.Y.S.2d 452, 967 N.E.2d 675, 675 (2012)); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014). These claims are "not subject to the pleading-with-particularity requirements of Rule 9(b)" and "need only meet the [ordinary pleading] requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *accord Velez v. Lasko Prod., LLC,* No. 1:22-CV-08581 (JLR), 2023 WL 8649894, at *2 (S.D.N.Y. Dec. 14, 2023). The Court finds that Plaintiff has adequately alleged all three elements of a claim under Sections 349 and 350.

   a.  <u>Consumer-Oriented Conduct</u>

   Defendant's alleged misrepresentations about the Product qualify as "consumer-oriented conduct." *Koch*, 944 N.Y.S.2d 452, 967 N.E.2d at 675 (citation omitted). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affects similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (brackets omitted) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745 (1995)). "This requirement is liberally construed." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 94 (S.D.N.Y. 2021). The

potential to affect similarly situated consumers clearly exists here, and, indeed, and neither party disputes this fact in their briefing.

      b.  <u>Materially Misleading</u>

      Plaintiff sufficiently alleges that Defendant's representations are "materially misleading." *Koch*, 944 N.Y.S.2d 452, 967 N.E.2d at 675 (citation omitted). "New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Id.* Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer." *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-9824 (CS), 2023 WL 8005319, at *3 (S.D.N.Y. Nov. 17, 2023) (quoting *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021)). Plaintiff identifies three allegedly deceptive statements on the Product's label forming the basis of his claims: (1) that the Product communicates that a single patch will adhere to a consumer for "no less than 8 Hours" providing relief; (2) the "Maximum Strength" statement; and (3) the "Numbing Relief" statement. The Court considers each type of statement in turn.

      *i.   Up to 8 Hours Relief*

Plaintiff contends that a reasonable consumer, considering the entire context of the Product label, would assume that the "Up to 8 Hours Numbing Relief" statement means that a single patch from the Product "will adhere to their bodies for no less than eight hours." (Am. Compl. ¶ 29; *see also* Pltf.'s Opp. at 3-4.) Defendant counters that the words "up to" establish a ceiling, not a floor, and courts have "recognized that 'up to' statements 'are generally not construed as concrete promises about a product's maximum yield.'" (Def.'s MoL at 8 (quoting *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 212 (W.D.N.Y. 2022).)

To be sure, "contrary to Plaintiff's contention, up to 8 hours quite plainly does not mean no less than 8 hours." *See Fuller*, 2023 WL 8005319, at *4 (quoting *Agee v. Kroger Co.*, No. 22-CV-4744, 2023 WL 3004628, at *3 (N.D. Ill. Apr. 19, 2023)) (quotation marks omitted). It is, however, "plausible to contend that the 'Up to 8 Hours' language on the label indicates the patch can provide pain relief for *as long as* eight hours, and the label says nothing about other factors relating to the patch that may result in a much shorter period of pain relief." *Id.* (quoting *Agee*, 2023 WL 3004628, at *3) (emphasis in original). Moreover, "[i]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). As this Court has consistently found in a spate of similar litigation involving lidocaine patches, a reasonable consumer buying the Product – which states that it provides "Up to 8 Hours [of] Relief," (Am. Compl. ¶ 2), and directs users to "remove [it] from the skin after at most 8 hours of application," (*id.* ¶ 30) – "would plausibly expect to be able to use the Product for approximately 8 hours, or at least something approaching 8 hours, based on that full context," *see Fuller*, 2023 WL 8005319, at *4; *see also Gonzalez Rodriguez v. Walmart Inc.*, No. 22-CV-2991, 2023 WL 2664134, at *5 (S.D.N.Y. Mar. 28, 2023) ("[T]he amended complaint

raises a plausible inference that a reasonable consumer would be misled by [defendant's] packaging on the two patch products. After reading directions that state that a user should use one patch for up to 12 hours, a reasonable consumer would indeed plausibly expect to be able to use a single patch for a period approaching 12 hours. Further, Plaintiffs do not allege that 12 hours is a guarantee; rather, they allege that the patches systematically fail to adhere for a time period close to 12 hours."); *Stevens v. Walgreen Co.*, 623 F. Supp. 3d 298, 303 (S.D.N.Y. 2022) ("The complaint raises a plausible inference that a reasonable consumer would be misled by [defendant's] packaging here. The packaging describes its lidocaine patches as stay-put flexible and instructs users to use one patch for up to 12 hours. In context, a reasonable consumer would plausibly expect to be able to use the patch for 12 hours."). Yet, as Plaintiff alleges, the Product "did not reliably adhere to Plaintiff's body for anywhere close to eight hours, which prevented it from providing even temporary pain relief." (Am. Compl. ¶ 76.)

Defendant cites two in-Circuit cases to support its argument regarding Plaintiff's implausible construction of the "Up to 8 Hours Relief" statement. The first, *Devey*, 635 F. Supp. 3d at 205, found that "up to statements are generally *not* construed as concrete promises about a product's maximum yield," *id.* at 212 (emphasis in original). *Devey*, however, concerned "ground coffee, for which it is well-known (*and as the Product label reflects*) that the greater the batch being prepared, the smaller the proportion of product that is necessary to produce a given strength." *Id.* (emphasis added). The *Devey* court further explained that because "a consumer following a brewing method listed on the Product's label could brew more than 90% of the maximum…servings described on the Product" and "plaintiff makes no allegation that the Product's representations as to the amount of coffee in each container (by weight) were inaccurate or misleading," the Product's label would not have misled a reasonable consumer as a matter of

law. *Id.* But as the Court previously explained, "such reasoning concerning coffee yields is inapplicable here, because unlike those coffee labels, the lidocaine patch labels at issue 'include no identification of any factors that might limit the amount of time that the patch would remain adhered to the body and deliver relief.'" *See Fuller*, 2023 WL 8005319, at *4 n.4 (quoting *Agee,* 2023 WL 3004628, at *3).

The second case Defendant relies upon is *Fink v. Time Warner Cable,* 714 F.3d 739 (2d Cir. 2013), in which the district court held that advertisements promising "an always on connection with speeds up to 3x faster than DSL and 100x faster than dial-up" were not deceptive under GBL § 349 because plaintiffs failed to "m[ake] specific allegations about the speed of their *overall* Internet connections" and "allege[d] only that their connection speeds were subpar with respect to a narrow subset of applications," *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283-84 (S.D.N.Y. 2011) (emphasis in original). The Second Circuit affirmed, explaining in a footnote that the district court correctly determined that the phrase "up to" was not misleading because "it would lead a reasonable consumer to expect that speeds could be less than the advertised…speeds," *Fink*, 714 F.3d at 740, 742 n.3, and the *Fink* plaintiffs only alleged that their internet speeds were impacted when "access[ing] certain high bandwidth Internet applications," *id.* at 740. "In other words, because the *Fink* plaintiffs alleged that their internet connections did not work as advertised in limited circumstances, rather than that they consistently failed to do so, the use of the phrase 'up to' in the advertisements at issue was not false and misleading." *Fuller*, 2023 WL 8005319, at *4 n.4. Here, by contrast, Plaintiff claims that "the Product cannot adhere for *any* time even approaching eight hours," (Am. Compl. ¶ 31) (emphasis added) – in other words, there are no circumstances in which the Product performs as advertised. Such allegations are sufficient to state a GBL claim, irrespective of the "up to" language on the Product's label. *See Goshen v. Mut. Life.*

*Ins. Co.*, 98 N.Y.2d 314, 322 (2002) (reinstating GBL claim where DSL service was advertised as "High speed Internet access up to 126X faster than your 56K modem" and plaintiffs alleged that the service "rarely, if ever, approaches the high speed expressly represented by defendants.").

"In sum, and as in other similar lidocaine patch cases, Plaintiff has plausibly alleged that the statement 'Up to 8 Hours' would lead a reasonable consumer 'to believe that the [P]roduct will remain on the body and provide relief for as long as eight hours.'" *See Fuller*, 2023 WL 8005319, at *5 (quoting *Agee*, 2023 WL 3004628, at *3). Because the Product allegedly fails to do so, Plaintiff has stated a viable GBL claim. *See Stevens*, 623 F. Supp. 3d at 303 ("Because it is plausible that a reasonable consumer would be misled by Defendant's labels and omissions relating to [the] stay-put patches for use up to 12 hours, Plaintiff's GBL claims survive."); *Gonzalez Rodriguez*, 2023 WL 2664134, at *5 (same). Accordingly, Defendant's Motion is denied as to Plaintiff's GBL Claims based on the "Up to 8 Hours" statement.

*ii. Maximum Strength*

Plaintiff next alleges that the Product is not "Maximum Strength" because "prescription lidocaine patches exist on the market that deliver greater amounts of lidocaine to the user." (Am. Compl. ¶¶ 35-37.) As this Court has previously explained, "[t]he argument that a consumer would expect an OTC product to be equivalent to the most powerful prescription medicine is a *nonstarter*." *Fuller*, 2023 WL 8005319, at *5 (S.D.N.Y. Nov. 17, 2023) (emphasis added) (quoting *Hodorovych v. Dollar Gen. Corp.*, No. 22-CV-3415, 2023 WL 3602782, at *3 (N.D. Ill. May 23, 2023)).[1] A reasonable consumer (for purposes of a GBL analysis) "would plainly 'understand that

---

[1] This Court has also reached the opposite conclusion and allowed claims regarding "maximum strength" lidocaine patches to proceed. *See Gonzalez Rodriguez*, 2023 WL 2664134, at *4; *Stevens*, 2022 WL 3681279, at *5. In particular, the Court has found a defendant's argument that prescription-strength patches are not the proper comparators to an OTC patch a "fact-intensive dispute[]...not appropriate for resolution at the motion-to-dismiss stage." *See Gonzalez Rodriguez*, 2023 WL 2664134, at *4. The Court respectfully disagrees with those holdings, which rely upon a Northern District of California case, *Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 912 (N.D. Cal. 2021), which "is at least partially distinguishable because the defendants there drew

OTC products differ from products that are available with a prescription,'" *id.* (quoting *Prescott v. Rite Aid Corp.*, No. 22-CV-5798, 2023 WL 2753899, at *2 (N.D. Cal. Apr. 3, 2023)), and contain only the "maximum strength" dose available at the drug store. As Plaintiff acknowledges, 4% is the maximum lidocaine concentration allowed by law in OTC products (Am. Compl. ¶ 7), and that is precisely what the Product provided.[2] Indeed, Plaintiff fails to identify an OTC lidocaine patch available on the market that is stronger the Product. "Plaintiff purchased the Product without a prescription at a supermarket…In such circumstances it is simply not plausible that he 'understood the phrase maximum strength to mean the highest dose that money can buy.'" *Fuller,* 2023 WL 8005319, at *6 (quoting *Prescott*, 2023 WL 2753899, at *2). Accordingly, because the "Maximum Strength" statement on the Product's label would not mislead a reasonable consumer acting reasonably, Plaintiff's GBL claims predicated on that statement are dismissed.

### iii.   Numbing Relief

Finally, Plaintiff contends that the Product's promise of "numbing relief" is misleading because it implies the Product "will completely block and numb nerves and pain receptors,

---

a direct comparison between their products and those available with a prescription: one social media post said the '4% of lidocaine found in [the defendant's] patches is close to the 5% lidocaine patch you would get with a prescription…The only change [the defendant] made was to improve the price.'" *See Prescott*, 667 F. Supp. 3d at 1014. *Scilex* stands for the proposition that unless an OTC drugmaker draws a *direct* comparison between its products and those available with a prescription, statements like "maximum strength" are generally understood as comparisons to other over-the-counter products. Here, the Defendant drew no such comparison to a prescription-only patch, and therefore a reasonable consumer would have interpreted "maximum strength" as relative to other OTC patches.

   [2] Plaintiff further argues that the "Maximum Strength" claim is misleading because the FDA has allegedly cautioned manufacturers not to use such claims. (Pltf.'s Opp. at 6.) But, as several courts in this Circuit have explained, "the FDA's regulations or views are irrelevant or at least not dispositive when it comes to determining whether a reasonable consumer would be deceived or mislead under GBL §§ 349-50." *See Valencia v. Snapple Beverage Corp.,* No. 23-CV-1399 (CS), 2024 WL 1158476, at *3 (S.D.N.Y. Mar. 18, 2024) (collecting cases); *see also Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) ("In the Second Circuit, a GBL claim is viable where the plaintiff makes a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under another statute that is not independently actionable, but fails where the violation of the other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive practice that serves as the basis for the GBL § 349 claim" and "Plaintiff [thus] cannot state a claim because ... the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349-50."); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 n.7 (S.D.N.Y. 2021) (potential violation of FDA regulations would not support GBL claim).

eliminate responses to painful stimuli, and treat neuropathic and musculoskeletal pain, including back and spinal pain." (Am. Compl. ¶ 45.) But Plaintiff's construction of the phrase "numbing relief" is not reasonable. In fact, the Product's label is devoid of any statement that the Product will "completely block" anything, and instead explicitly limits its use to "*temporary* relief of pain." (*Id.* ¶ 49 (emphasis added).) "No reasonable consumer would view the Product's label and conclude that the Product completely blocks and numbs nerves and pain receptors and eliminates responses to painful stimuli." *Fuller,* 2023 WL 8005319, at *6. *Cf. Hardy v. Olé Mexican Foods, Inc.*, 616 F. Supp. 3d 247, 251 (W.D.N.Y. 2022), *aff'd*, 2023 WL 3577867 (2d Cir. May 22, 2023) ("No reasonable consumer would view the representations relied upon by Plaintiff and automatically conclude the tortillas were manufactured in Mexico when the representations say nothing about the country of origin and the disclaimer on the back of the packaging expressly states where the tortillas are made."). Indeed, Plaintiff does not even claim to have believed that the Product would completely block or eliminate pain. Accordingly, Defendant's Motion as to this statement is granted and Plaintiff's claim predicated on the "Numbing Relief" statement dismissed.

   c.  <u>Injury</u>

     Finally, with regard to his claim premised on the "Up to 8 Hours" statement, Plaintiff adequately pleads that he "suffered injury as a result of [Defendant's] allegedly deceptive act or practice." *Koch*, 944 N.Y.S.2d 452, 967 N.E.2d at 675 (citation omitted). Plaintiff relies on a price-premium theory of injury. (*See* Am. Compl. ¶ 70.) Under a price-premium theory, "a plaintiff claims to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021). A plaintiff pursuing a GBL claim under a price-premium theory "must allege not only that [the] defendant[ ] charged a price premium, but also that there is a connection between

the misrepresentation and any harm from, or failure of, the product." *Duran*, 450 F. Supp. 3d at 346 (quotation marks and citation omitted). "This connection often takes the following form: A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Id.*

Plaintiff alleges that Defendant marketed its Product as having a unique quality based on its strength and numbing relief and that he paid the price premium. (*See* Am. Compl. ¶ 77 ("Plaintiff bought the Product at or exceeding the above-referenced price."); *id.* ¶ 80 ("Plaintiff chose between Defendant's Product and similarly represented yet truthful products which did not misrepresent their attributes, features, and/or components.").) Thus, Plaintiff has pleaded the elements of an injury under a price-premium theory. *See Velez*, 2023 WL 8649894, at *4.

In sum, Plaintiff has adequately pleaded GBL claims based on the "Up to 8 Hours" statement, and Defendants' Motion is denied as to this type of GBL claim, but granted as to all other types of GBL claims the Amended Complaint asserts.

## III. Breach of Express Warranty

Plaintiff alleges that Defendant breached an express warranty. (Am. Compl. ¶ 108.) An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. Law § 2-313(1)(a). "In order to assert a claim for breach of an express or implied warranty under New York law, 'a buyer must provide the seller with timely notice of the alleged breach.'" *Feldman v. Wakefern Food Corp.,* No. 22-CV-06089 (PMH), 2024 WL 495105, at *6 (S.D.N.Y. Feb. 8, 2024) (citation omitted). "To adequately plead the pre-suit notice requirement, plaintiffs must provide factual allegations – such as the date and method plaintiffs sent a pre-suit notice – supporting the

contention that they notified the defendant of the alleged breach within a reasonable time." *Dwyer*, 598 F. Supp. 3d at 155. Here, the Amended Complaint alleges only that "Plaintiff recently became aware of Defendant's breach of the Product's warranties," (Am. Compl. ¶ 104), and that "Plaintiff provided or provides notice to Defendant…that it breached the Product's warranties," (*id.* ¶ 105). Such a vague allegation "is insufficient to avoid dismissal." *Gordon*, 2022 WL 836773, at *14 (collecting cases).

Plaintiff's rebuttal that "notice requirements for breaches of warranty have long been jettisoned in New York" for retail sales" (Pltf.'s Opp. at 11) does not excuse his failure to provide and adequately plead pre-suit notice. To make this argument, Plaintiff relies upon *Gavilanes v. Gerber Prods. Co.*, No. 20-CV-5558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021), but, as Defendant points out, "*Gavilanes*…has been repeatedly criticized by courts in this district as misapplying New York law," (Def.'s Reply at 6 (collecting cases)), and reflects a disfavored minority view, *see Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 433-34 (S.D.N.Y. 2023) (collecting cases). In any event, the *Gavilanes* exception to the notice requirement "is limited to products…that cause physical injury," *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 n.3 (S.D.N.Y. 2020), and "does not apply where, as here, a plaintiff alleges only economic injury," *Gordon*, 2022 WL 836773, at *14; *see Feldman,* 2024 WL 495105, at *6 (holding that *Gavilanes* exception "has no application here where [p]laintiff claims purely economic injury.") (citation omitted); *Velez*, 2023 WL 8649894, at *8 ("[t]o the extent that decisions such as *Gavilanes* 'create an exception to the notice requirement for breach of warranty claims, their reasoning relies on the physical harm suffered by plaintiffs that made their case more like a tort than a contract dispute.'") (citation omitted).[3]

---

[3] As this Court has previously noted, Plaintiff's counsel (Mr. Spencer Sheehan) has unsuccessfully advanced this "sweeping argument that the pre-suit notice requirement has long been jettisoned in New York state

"[T]imely, pre-litigation notice' is 'a condition precedent to bringing an action for breach of warranty.'" *Feldman*, 2024 WL 495105, at *6 (citation omitted). Because Plaintiff has failed to meet this condition precedent, his express warranty claim must be dismissed.

## IV.    Fraud

Plaintiff asserts a fraud claim against Defendant. (Am. Compl. ¶ 110.) To state a claim for common law fraud a plaintiff must show that: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010). Fraud claims must be pleaded "'with particularity.'" *Id.* at 481 (quoting Fed. R. Civ. P. 9(b)). To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "A strong inference of fraudulent intent requires that a plaintiff plead (1) facts to show that defendants had both motive and opportunity to commit fraud or (2) facts that constitute strong circumstantial evidence of

for retail consumers," on multiple occasions, despite repeated admonishments from this Court and others in the country, *see Guzman v. Walmart Inc.*, No. 22-CV-3465, 2023 WL 4535903, at *4 (N.D. Ill. May 15, 2023), that "reliance on any such exception is misplaced and ineffectual." *See Fuller*, 2023 WL 8005319, at *8 n.8; *see also Inong v. Fujifilm N. Am. Corp.*, No. 22-CV-09720 (PMH), 2024 WL 291226, at *6 n.6 (S.D.N.Y. Jan. 25, 2024). "That this time," as before, "the frivolous argument was made in a brief signed by co-counsel is hardly comforting. Mr. Sheehan and those with whom he works *should consider the provisions of Rule 11 before attempting to raise this argument in the future*." *See Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025 (CS), 2024 WL 22061, at *6 n.9 (S.D.N.Y. Jan. 2, 2024) (emphasis added).

conscious misbehavior or recklessness." *Bermudez v. Colgate-Palmolive Co.*, No. 21-CV-10988, 2023 WL 2751044, at *12 (S.D.N.Y. Mar. 31, 2023).

Plaintiff fails to allege facts that give rise to a strong inference of fraudulent intent. *See Lerner*, 459 F.3d at 290. The Amended Complaint only contains the conclusory allegation that "Defendant is part of one of the largest international conglomerates selling consumer packaged goods, with immense resources and the ability to ensure the products it sold were represented truthfully, yet willingly failed to do so." (Am. Compl. ¶ 111.) That "sparse, conclusory allegation…sheds virtually no light on Defendant's state of mind," *see Fuller*, 2023 WL 8005319, at *7, and "the simple knowledge that a statement is false is not sufficient to establish fraudulent intent," *Feldman*, 2024 WL 495105, at *8 (quoting *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018)). *See also Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *13 (S.D.N.Y. Mar. 21, 2022) (rejecting as insufficient the allegation that "Defendant's fraudulent intent is evinced by its knowledge that the Products' abilities were not consistent with its representations."); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (rejecting allegation that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front labels, when it knew its statements were neither true nor accurate and could mislead consumers" as too conclusory to establish fraudulent intent); *Twohig*, 519 F. Supp. 3d at 166 (dismissing fraud claim where "[t]he complaint only contains the conclusory allegation that Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers."). "Rather, to plead a strong inference of fraudulent intent, a plaintiff must either 'allege facts to show that defendants had both motive and opportunity to commit fraud,' or 'allege facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness.'" *Velez*, 2023 WL 8649894, at *10 (citation omitted). Plaintiff does

neither here, and his fraud claim is dismissed as a result.

## V.      Unjust Enrichment

To state a claim for unjust enrichment under New York law a plaintiff must show that "(1)

the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable

to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*,

136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). "Unjust enrichment is available only in unusual

situations when, though the defendant has not breached a contract nor committed a recognized tort,

circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney*

*v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).

Unjust enrichment is not to be used as "a catchall cause of action…when others fail." *Feldman*,

2024 WL 495105, at *8 (citation omitted). As a result, courts will routinely dismiss an unjust

enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin*

*v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013); *see*

*also Yookel, Inc. v. U.S. Steel Corp.*, No. 22-655, 2023 WL 3033512, at *2 (2d Cir. Apr. 21, 2023)

(summary order).

Here, Plaintiff "makes no factual allegations unique to [his] unjust enrichment claim and

fails to explain why the unjust enrichment claim is distinct from…[his other] claims." *Advanced*

*Knowledge Tech, LLC v. Fleitas*, No. 21-CV-992, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28,

2021); *see Adeghe*, 2024 WL 22061, at *7 (dismissing unjust enrichment claim because plaintiff

failed to explain how it was not duplicative of other claims); *Alce v. Wise Foods, Inc.*, No. 17-CV-

2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim

as duplicative of GBL §§ 349 and 350 claims). In fact, Plaintiff concedes that his theory of unjust

enrichment is duplicative because it "relies on same allegations as his other causes of action," (Pltf.'s Opp. at 12 (quoting Fed. R. Civ. P. 8(d)(2)), but argues that he is "[p]ermitted…to 'set out 2 or more statements of a claim or defense alternatively or hypothetically,'" (*id.* (quoting Def.'s MoL at 18)). As this Court has previously explained to Plaintiff's counsel on *multiple* occasions, while "unjust enrichment may be pleaded in the alternative, it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *See Adeghe*, 2024 WL 22061, at *7 n.11; *Fuller*, 2023 WL 8005319, at *9 n.10; *see also Campbell v. Whole Foods Market Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative of GBL claim, even though GBL claim survived dismissal, and even though plaintiff purported to make unjust enrichment claim in the alternative); *Gordon v. Hain Celestial Grp., Inc.,* No. 16-CV-6526 (KBF), 2017 WL 213815, at *7 (S.D.N.Y. Jan. 18, 2017) ("Although Rule 8(d) permits a plaintiff to plead alternative—and even inconsistent—theories of liability, ... an unjust enrichment claim must be dismissed when it entirely 'duplicates' other tort or contract claims.") (internal citations omitted). Here, Plaintiff "makes no factual allegations unique to the unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from his other claims." *Fuller*, 2023 WL 8005319, at *9 (brackets, ellipsis, and citation omitted). Those deficiencies are fatal to his unjust-enrichment claim, and it is dismissed as a result.

## VI.   Leave to Amend

In the final sentence of his opposition brief, Plaintiff states without further elaboration that if the Court grants Defendant's motion to dismiss, it should "grant leave to file a Second Amended Complaint." (Pltf.'s Opp. at 13.) The Court denies this request.[4]

"Once a responsive pleading has been filed, [a] plaintiff may amend the complaint only with leave of court." *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (citation omitted). "[I]t is within the sound discretion of the district court" to deny leave to amend "for good reason," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)), including "repeated failure to cure deficiencies by amendments previously allowed" or "futility of amendment," *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In particular, a "plaintiff need not be given leave to amend if he fails to specify…how amendment would cure the pleading deficiencies in his complaint." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022) (brackets omitted) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)).

"Here, [Plaintiff] has failed to articulate…any additional allegations that he could assert in a second amended complaint that could save his [dismissed claims]." *Id*; *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure

---

[4] "Plaintiff's request to amend, contained solely in his opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading is improper under Fed. R. Civ. P. 15." *Inong*, 2024 WL 291226, at *5 (quoting *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 319 (S.D.N.Y. 2021)).

the deficiencies identified by the Court"). In addition, most of "[t]he problems with the dismissed claims are substantive" and "better pleading will not cure them," *Leschak v. Raiseworks, LLC*, No. 14-CV-8072, 2016 WL 11695068, at *10 (S.D.N.Y. Mar. 7, 2016), rendering amendment largely futile, *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019). Finally, Plaintiff has already amended his complaint once, without adequately remedying the defects in the original complaint. *See Lopez v. U.S. Dep't of the Interior*, No. 22-cv-04744 (LTS), 2023 WL 2775682, at *4 (S.D.N.Y. Apr. 3, 2023). "Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend." *Fuller*, 2023 WL 8005319, at *10; *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").

Plaintiff has offered no explanation for how he would be able to cure the defects in his claims, the Court denies Plaintiff's request, made in the alternative in his opposition brief, for leave to further amend.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. The Clerk of Court is kindly directed to terminate the motion at ECF No. 16.

Defendant's motion to dismiss the Amended Complaint is DENIED as to Plaintiff's GBL claims based on the "Up to 8 Hours" statement, but GRANTED as to all other types of GBL claims the Amended Complaint asserts. Defendant's motion to dismiss is also GRANTED as to Plaintiff's

other claims. All of Plaintiff's claims dismissed by this Opinion and Order are dismissed with prejudice. Defendant is directed to file an Answer on or before June 12, 2024. The parties are directed to complete and file a Case Management Plan and Scheduling Order by June 20, 2024.

Dated:    May 28, 2024                                    SO ORDERED:
          White Plains, New York

                                            _____
                                                  NELSON S. ROMÁN
                                              United States District Judge

21

UNITED STATES DISTRICT COURT                                    Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                                 Plaintiff(s),       **AND SCHEDULING ORDER**

          - against -


                                 Defendant(s).       _____ CV _____ (NSR)


-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

    1.    All parties [consent] [do not consent] to conducting all further proceedings before
          a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
          The parties are free to withhold consent without adverse substantive consequences.
          (If all parties consent, the remaining paragraphs of this form need not be
          completed.)

    2.    This case [is] [is not] to be tried to a jury.

    3.    Joinder of additional parties must be accomplished by _____.

    4.    Amended pleadings may be filed until _____. Any party
          seeking to amend its pleadings after that date must seek leave of court via motion.

    5.    Interrogatories shall be served no later than _____, and responses
          thereto shall be served within thirty (30) days thereafter.  The provisions of Local
          Civil Rule 33.3 [shall] [shall not] apply to this case.

    6.    First request for production of documents, if any, shall be served no later than
          _____.

    7.    Non-expert depositions shall be completed by _____.

          a.    Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

          b.    Depositions shall proceed concurrently.

          c.    Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:

White Plains, New York

_____
Nelson S. Román, U.S. District Judge